No. 25-1239

IN THE UNITED STATES COURT OF APPEALS

FOR THE SEVENTH CIRCUIT

STATE OF WISCONSIN,

Petitioner,

v.

UNITED STATES ENVIRONMENTAL PROTECTION AGENCY and LEE ZELDIN, Administrator, United States Environmental Protection Agency,

Respondents.

# STATE OF WISCONSIN'S RESPONSE IN OPPOSITION TO CLEAN WISCONSIN AND SIERRA CLUB'S MOTION FOR LEAVE TO INTERVENE

## INTRODUCTION

The State of Wisconsin filed this case eighteen months ago, challenging an administrative rule issued by the Environmental Protection Agency (EPA) that unlawfully imposed substantial burdens on Wisconsinites and Wisconsin businesses, while failing to control the actual problem of ozone transported into Wisconsin from out of state.[1]

---

[1] *See* Findings of Failure To Attain and Reclassification of Areas in Illinois, Indiana, Michigan, Ohio, and Wisconsin as Serious for the 2015 Ozone National Ambient Air Quality Standards, 89 Fed. Reg. 10,1901 (Dec. 17, 2024).

Neither Clean Wisconsin nor Sierra Club sought to intervene then.

Over a year ago, Wisconsin moved to stay the Final Rule, which this Court granted. (Dkt. 12; 16.)

Neither Clean Wisconsin nor Sierra Club sought to intervene then.

And over a month ago, as the parties prepared to submit briefs on the merits of Wisconsin's challenge to the Rule, EPA granted reconsideration of the Rule and notified Wisconsin that the agency "intends to undertake a notice-and-comment action to reconsider the [Rule]" (Dkt. 29:18)—precisely the relief Wisconsin sought in this case, (*see* Dkt. 12:12–20).

Based on that reconsideration, the parties jointly asked this Court to hold the case in abeyance to allow EPA "to complete the reconsideration process in an orderly and deliberate manner while preserving both this Court's and the parties' resources." (Dkt. 29:2; *see also* Dkt. 30 (order granting abeyance).)

Now, Clean Wisconsin and Sierra Club (hereafter, "movants") move to intervene and ask this Court to lift the abeyance, disregard the parties' stipulation, and summarily decide the case in their favor.

This Court has seen such requests in the past and dealt with them appropriately, refusing to allow "intermeddlers . . . to hijack litigation that the real parties in interest can resolve to mutual benefit." *Sierra Club, Inc. v. E.P.A.*, 358 F.3d 516, 518 (7th Cir. 2004).

The motion to intervene should be denied under the standards for both mandatory and permissive intervention. The request is untimely by over a year; denying intervention will not impede movants' ability to protect their interests; and, in any event, the State of Wisconsin already *is* representing the same interests movants seek to represent—attempting to "abat[e] ozone pollution" in Wisconsin and nearby states. (Dkt. 31-1:25.)

The motion to intervene should be denied, and the contingent motion (Dkt. 32-1) should be denied as moot.

## ARGUMENT

### I. Movants fail to support intervention as of right.

#### A. Governing legal standards.

This case involves a petition for review of an agency order, governed by Fed. R. App. P. 15. Intervention is governed by Rule 15(d), which requires that a motion to intervene "must be filed within 30 days after the petition for review is filed." Fed. R. App. P. 15(d).

Other than establishing a 30-day deadline for requests to intervene, Rule 15 "does not provide standards for intervention, so appellate courts have turned to the rules governing intervention in the district courts under Fed. R. Civ. P. 24." *Sierra Club, Inc.*, 358 F.3d at 517–18.

Rule 24, in turn, "provides two avenues for intervention, either of which must be pursued by a timely motion." *Grochocinski v. Mayer Brown Rowe & Maw, LLP*, 719 F.3d 785, 797 (7th Cir. 2013). "The timeliness requirement forces interested non-parties to seek to intervene promptly so as not to upset the progress made toward resolving a dispute." *Id.* Courts consider "four factors to determine whether a motion is timely: '(1) the length of time the intervenor knew or should have known of his interest in the case; (2) the prejudice caused to the original parties by the delay; (3) the prejudice to the intervenor if the motion is denied; (4) any other unusual circumstances.'" *Id.* at 797–98 (quoting *Sokaogon Chippewa Cmty. v. Babbitt*, 214 F.3d 941, 949 (7th Cir. 2000)).

At bottom, the timelines inquiry "is essentially a reasonableness test: 'potential intervenors need to be reasonably diligent in learning of a suit that might affect their rights, and upon so learning they need to act reasonably promptly.'" *Ali v. City of Chi.*, 34 F.4th 594, 599 (7th Cir. 2022) (quoting *Lopez-Aguilar v. Marion Cnty. Sheriff's Dep't*, 924 F.3d 375, 388 (7th Cir. 2019)).

In addition to making a timely motion, "[a] non-party who wishes to intervene as of right must satisfy three requirements under Rule 24(a):"

> (1) [T]he applicant must claim an interest relating to the property or transaction which is the subject of the action,

> (2) the applicant must be so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, and
>
> (3) existing parties must not be adequate representatives of the applicant's interest.

*Lopez-Aguilar*, 924 F.3d at 391 (alteration in original) (citation omitted).

### B. The motion to intervene is untimely by nearly 18 months, and no exception justifies movants' delay.

Rule 15(d) is clear and mandatory: a motion to intervene "must be filed within 30 days after the petition for review is filed." Fed. R. App. P. 15(d). Because movants missed that deadline by well over a year, their request is untimely and can be summarily denied on that basis alone.

### C. Movants fail to justify any exception to Rule 15(d)'s 30-day deadline.

Seeking to avoid the clear application of Rule 15(d)'s deadline, movants point to the "four factors that guide the timeliness inquiry for intervention under FRCP 24" noted above. (Dkt. 31-1:13 (listing factors).)

Even if this Court were to reach these considerations, none supports movants' long-overdue request. Movants' 18-month delay between the filing of this case and their motion to intervene is unreasonable in light of the circumstances of the Rule and movants' history of engagement on ozone-related issues.

### 1. Movants have long been aware of their interest in this case.

Both movants have been aware of the Rule at issue in this case, almost certainly since before the Rule was issued. (*See, e.g.*, Dkt. 31-2 ¶¶ 3–11 (declaration of manager of Clean Wisconsin's Energy & Air, detailing organization's use of "legal expertise and advocacy" and familiarity with ozone air quality standards at issue in this case); Dkt. 31-7:1–4 (declaration of director of Sierra Club Wisconsin Chapter, explaining organization's "past and ongoing efforts to strengthen the ozone National Ambient Air Quality Standards").) Indeed, movant Clean Wisconsin commented over a year ago about the stay of the Rule at issue in this case, illustrating that the group was closely monitoring Wisconsin's and EPA's actions related to the Rule. *See* Wisconsin Public Radio, *Wisconsin, businesses get reprieve from strict smog regulations under court order*, https://www.wpr.org/news/wisconsin-businesses-reprieve-strict-smog-regulations-court (Sept. 8, 2025).

Even beyond the specifics of this case, movants have known for years about Wisconsin's efforts to combat out-of-state ozone and have been involved in commenting on and variously challenging or supporting administrative rules at nearly every step of Wisconsin's ozone saga. *See, e.g.*, *Clean Wis. v. EPA*, 964 F.3d 1145, 1170–76 (D.C. Cir. 2020) (addressing Clean Wisconsin's challenge to EPA's decisions designating

multiple Wisconsin counties as "attaining" the air quality standards for ozone); Sam Roherty & Paul Mathewson, Ph.D., *Clean Wisconsin Environmental Health Initiative: How do ozone levels impact public health in Wisconsin?* (July 2026), https://www.cleanwisconsin.org/wp-content/uploads/2026/08/Ozone_brief_FINAL.pdf. In fact, movant Sierra Club was recently aligned with the State of Wisconsin in its effort to require better control of emissions upwind of Wisconsin. *See State of Wisconsin v. EPA*, No. 23-1201 (Final Opening Br. of Pet'r-Intervenor Sierra Club, Dkt. 2071513:11 (Aug. 22, 2024)). In that case, Sierra Club noted that, "[a]s Wisconsin explain[ed] . . . the rule does not prohibit enough pollution from states upwind of Wisconsin," and that "emissions from six states—Illinois, Indiana, Michigan, Missouri, Ohio, and Texas—will continue to interfere with Wisconsin's (and other states') ability to meet the ozone standard." *Id.*

Now, movants claim that they didn't seek to intervene in this case earlier because "until July 28, 2026," they believed that EPA would adequately represent their interests. (Dkt. 31-1:14–16.)

Even putting aside whether movants reasonably believed that EPA would represent their interests, "adequate representation" is not the operative question for this part of the "timeliness" inquiry. *See Lopez-Aguilar*, 924 F.3d at 387–91. Rather, the controlling question here is "the length of time the intervenor knew or should have known of his interest in the

case." *Sokaogon Chippewa Cmty.*, 214 F.3d at 950 (affirming denial of intervention where movant "should have asked . . . to intervene much sooner").

As movants state, their interest in the case is "abating ozone pollution in the region" (Dkt. 31-1:25)—an interest that long predates July 2026 and certainly existed within the first 30 days of this case being filed, *see* Fed. R. App. P. 15(d).

Because movants have been aware of their interest in this case since its inception—and at the very least, since the Rule was stayed one year ago (*see* Dkt. 16)—this factor of the timeliness inquiry cuts sharply against movants.

Even if this Court would consider movant's argument about "adequate representation" as part of this timeliness inquiry, they fail to show they acted reasonably in addressing what they view as a shift in adequate representation. (Dkt. 31-1:14–16.) If movants believe that EPA no longer adequately represents their interests, they provide no explanation why that happened on July 28, 2026, when EPA agreed to undertake notice and comment, rather than, say, a year ago when EPA declined to oppose Wisconsin's request to stay the Rule. (*See* Dkt. 31-1:14–16; *see also* Dkt. 14.)

Their sole support for their argument that EPA adequately represented their interests until last month is that EPA "fil[ed] the certified list of the administrative record on April 27, 2026." (Dkt. 31-1:15.) But EPA's filing of the administrative record was required by the rules of appellate procedure,

*see* Fed. R. App. P. 17(a), and this Court's order (Dkt. 1-3). That action says nothing about adequate representation.

More importantly, movants don't even try to explain why EPA's decision not to oppose the stay in September 2025 (Dkt. 14) did not urge them into action. (*See* Dkt. 31-1:14–15.)

If movants believe that EPA no longer adequately represents their interests based on the agency's willingness to reconsider the Rule, they fail to explain why that same concern didn't arise when the agency declined to oppose the stay a year ago. Because they did not act "reasonably promptly" in seeking to intervene then, they cannot now establish the "reasonabl[e] diligen[ce]" necessary to support intervention. *See Ali*, 34 F.4th at 599 (citation omitted); *see also Sokaogon Chippewa Cmty.*, 214 F.3d at 950.

**2. The existing parties will suffer prejudice if movants are allowed to intervene.**

The "most important consideration in deciding whether a motion for intervention is untimely is whether the delay in moving for intervention will prejudice the existing parties to the case." *Lopez-Aguilar*, 924 F.3d at 389–90 (quoting *Nissei Sangyo Am., Ltd. v. United States*, 31 F.3d 435, 439 (7th Cir. 1994)). The prejudice consideration is particularly important where the existing parties have reached a stipulated resolution or partial resolution to the case. *See id.* In that circumstance, "intervention can prejudice the

original parties" because the ultimate disposition of the case "cannot be approved without the intervenor's agreement." *Id.* at 390. And even if the intervenor eventually would approve any agreement, the parties are nonetheless prejudiced, since any approval would "necessarily be delayed" by the addition of the intervenor. *Id.* (quoting *City of Bloomington v. Westinghouse Elec. Corp.*, 824 F.2d 531, 536 (7th Cir. 1987)).

Here, the prejudice to the State and federal government "would be 'real and appreciable.'" *Id.* (citation omitted). Following six months of stipulated abeyance, and then a year of the Rule being stayed, EPA recently granted Wisconsin's motion to administratively reconsider the Rule at issue in this case and "to undertake a notice-and-comment action to reconsider the determination." (*See* Dkt. 29:18.) That is, EPA agreed to provide a significant measure of the relief that Wisconsin sought by challenging the rule in the first place. (*See* Dkt. 12:12–20 (stay motion, arguing that lack of notice and comment supported relief).)

This prejudice that Wisconsin and EPA would now suffer is "the 'most important consideration,'" *Lopez-Aguilar*, 924 F.3d at 389 (citation omitted), and supports denying intervention here. Allowing movants to intervene would give them ultimate control over the parties' stipulated resolution, potentially disrupting—or at the very least delaying—the resolution the parties have reached. *See id.* at 389–90.

To their credit, movants don't hide their intention to disrupt the stipulated resolution the parties have reached. (*See* Dkt. 32-1.) They seek to intervene for exactly that reason, having filed a contingent motion to lift the abeyance, dissolve the stay of the Rule, and summarily deny Wisconsin's petition for review. (*See* Dkt. 32-1.) This Court has recognized that this type of attempt to "hijack" litigation is a reason to deny intervention, not a basis to find prejudice to the movant. *See Sierra Club, Inc.*, 358 F.3d at 518.

In their attempt to explain why their involvement would not prejudice the parties, movants seek to distract, pointing to the fact that "[t]he parties have not filed briefs, nor is a schedule set," and note that "Wisconsin filed its petition for review with the expectation that it would have to expend resources prosecuting this case to the end." (Dkt. 31-1:20.)

Without even attempting to grapple with the disruption they seek to cause, movants fail to explain why their involvement would not prejudice the existing parties. (*See* Dkt. 31-1:20.) Intervention can be denied for this additional reason. *See Sierra Club, Inc.*, 358 F.3d at 518.

#### 3. Movants would not be prejudiced by denial of intervention.

As noted above, EPA soon will "undertake a notice-and-comment action to reconsider the ['Serious' nonattainment] determination." (Dkt. 29:18.) Movants claim to be prejudiced by that outcome, but don't explain how the opportunity

for notice and comment harms them, or why litigating this case would better serve their interest in abating air pollution.

Notice and the opportunity for comment "ensure that agency regulations are tested via exposure to diverse public comment," "ensure fairness to affected parties," and afford those potentially affected by a regulation an "opportunity to develop evidence in the record to support their objections to the rule and thereby enhance the quality of judicial review." *Int'l Union, United Mine Workers of Am. v. Mine Safety & Health Admin.*, 407 F.3d 1250, 1259 (D.C. Cir. 2005).

Movants, like all members of the public, will have the opportunity to comment on EPA's proposed rule when it is released. (*See* Dkt. 29:1–4.) In the meantime, they suffer no prejudice while the preexisting nonattainment designation remains in place. (*See* Dkt. 16; 12:63 (letter from Wisconsin Department of Natural Resources, requesting stay of Serious Reclassification rule and recognizing preservation of "Wisconsin's ozone nonattainment areas [in] their previous classification of Moderate").)

In support of their theory of prejudice, movants claim that lifting the stay of the Rule would "remedy [movants'] members' injuries because it will require Wisconsin to take steps to reduce emissions of ozone precursors in [southeastern Wisconsin]." (Dkt. 31-1:18–19.) Their argument is flawed from start to finish.

For one, they don't directly address prejudice relating to *intervention*; they address prejudice *if the Rule remains stayed*. To support prejudice, movants assume that this Court will agree with them that the stay should be lifted and the Rule should be allowed to take effect. (*See* Dkt. 31-1:18–19.) But if that were the case, movants should have sought to intervene long ago when the stay was entered.

What's more, even accepting that they could demonstrate prejudice now by pointing to potential benefits that *might* arise, the benefits they point to are illusory. They claim that allowing the Rule to take effect will reduce ozone levels in Wisconsin, but the whole point of Wisconsin's substantive opposition to the Rule is that the Rule will not meaningfully reduce ozone levels in Wisconsin, since the majority of ozone in Wisconsin's nonattainment areas comes from out of state.

For years, Wisconsin has presented EPA with solid (and largely undisputed) analyses showing that out-of-state emissions are responsible for the majority of human-caused ozone at Wisconsin's lakeshore monitors, driven in large part by Lake Michigan's unique ozone transport patterns. (*See, e.g.*, Dkt. 12:68, 76, 79–80); *see also* Federal "Good Neighbor Plan" for the 2015 Ozone National Ambient Air Quality Standards, 88 Fed. Reg. 36,654, 36,705–06 (June 5, 2023); *id*. at 36,741–43. For example, Wisconsin provided "a comprehensive, multifaceted analysis of the origins, transport, and impacts of ozone along

Wisconsin's Lake Michigan shoreline," which established that ozone nonattainment in that area was primarily caused by out-of-state emissions and, in turn, that imposing additional burdens on Wisconsin would not meaningfully change ozone levels. *See* Letter from Gail Good, Director, Air Mgmt. Program, Wis. Dep't Nat. Res., to Robert Kaplan, Acting Reg'l Adm'r, EPA - Region 5, 1 (Apr. 20, 2017), https://www.regulations.gov/document/EPA-HQ-OAR-2017-0548-0051; *see also* Angela F. Dickens, *Conceptual Models of Ozone Formation in the Great Lakes Region*, 18 (Feb. 2023), https://www.ladco.org/wp-content/uploads/Projects/Ozone/Ozone-conceptual-model-report-FINAL-Feb-2023.pdf. EPA acknowledges as much, recognizing that Wisconsin is responsible for only 8–16% of ozone measured at the State's nonattaining monitors, while emissions transported from other states contribute 42–48%. (*See* Dkt. 12:76.)

Given the undisputed effects of out-of-state emissions and Wisconsin's minimal contributions of ozone precursors, Wisconsin has consistently urged EPA to take meaningful action to control those out-of-state emissions, rather than simply tightening the regulatory screws on Wisconsin and its residents and businesses. (*See* Dkt. 12:48–49 (listing some communications in the past five years); *see also* Dkt. 12:74–89); Letter from Gail Good, Director, Air Mgmt., Wis. Dep't of Nat. Res., to Michael S. Regan, Adm'r, EPA, 1 (June 10, 2022), https://www.regulations.gov/comment/EPA-HQ-OAR-2021-0742-0178.

In terms of movants' alleged prejudice, this background demonstrates even if the stay were lifted and the Rule were allowed to take effect, the Rule will not control the out-of-state emissions that drive Wisconsin's ozone nonattainment. Allowing the Rule to take effect would not afford the air-quality benefits that movants suggest, so denying them an illusory benefit poses no prejudice.

And even if movants' assertions of prejudice are taken at face value, a balancing of the movants' and the existing parties' interests favors the existing parties. *See Sokaogon Chippewa Cmty.*, 214 F.3d at 950 (affirming denial of intervention, recognizing that lower court properly balanced competing claims of prejudice "and reasonably concluded that the equities favored the settling parties"). As noted above, the parties' stipulation presents a path forward whereby notice and comment will be undertaken and, eventually, a new rule may be adopted to fully control out-of-state emissions. (*See* Dkt. 29.) That path forward affords benefit to movants as well as the public, such that the equities favor allowing the existing parties to proceed on that path.

#### 4. Movants offer no other circumstances supporting their late intervention.

When considering timeliness, this Court also may consider "any other unusual circumstances" in addition to those already addressed. *See Lopez-Aguilar*, 924 F.3d at 388 (citation omitted). Movants do not identify any

such circumstances supporting their intervention. (*See* Dkt. 31-1:14–20 (addressing only first three factors).)

The preceding considerations show that none of the additional considerations of timeliness justify movants' delay to allow their intervention.

### D. Movants also fail to meet additional criteria for intervention as of right under Fed. R. Civ. P. 24(a)(2).

In addition to the lack of a timely motion, two additional considerations for intervention under Fed. R. Civ. P. 24(a)(2) also weigh against intervention: denying intervention will not impair movants' ability to protect their interests and existing parties adequately represent movants' interest in abating air pollution. *See Lopez-Aguilar*, 924 F.3d at 391.

#### 1. Denying intervention will not impair movants' ability to protect their interests in clean air.

As explained above, § I.C.3., movants will not be prejudiced if this case is allowed to proceed without them as parties. Those same considerations show that denying their intervention will not "impair or impede" their ability to protect their interests. *See* Fed. R. Civ. P. 24(a)(2).

In support of this element, movants claim that they need to intervene so the Rule can take effect "to obtain much-needed ozone pollution reductions as soon as possible." (Dkt. 31-1:25.)

Again, this perceived benefit of the Rule is illusory. Uncontrolled out-of-state emissions are driving ozone nonattainment in southeastern

Wisconsin and will continue to do so if left unabated. (*See* Dkt. 12:68, 76, 79–80.) If movants wish "to obtain much-needed ozone pollution reductions as soon as possible," (Dkt. 31-1:25), those interests will be best served by working with the State of Wisconsin (and hopefully EPA) to ensure that upwind, out-of-state emissions are adequately controlled. Denying intervention in this case will not impair movants' ability to pursue those interests.

**2. The State of Wisconsin adequately represents movants' interest in abating ozone pollution.**

The State of Wisconsin filed this case because the Rule imposes substantial burdens on Wisconsin residents and businesses with no meaningful benefit to Wisconsin's air quality. The State of Wisconsin, through its Department of Natural Resources, has an exceedingly strong interest and statutory mandate to manage and protect Wisconsin's air resources. The interests that movants assert are already adequately represented in this case.

By statute, Wisconsin requires its Department of Natural Resources to take substantial measures to protect air quality. *See generally* Wis. Stat. ch. 285. These include the obligations to "[p]repare and develop . . . comprehensive plans for the prevention, abatement and control of air pollution in this state," Wis. Stat. § 285.11(6), to organize and maintain "a comprehensive and integrated program to enhance the quality, management and protection of the state's air resources," Wis. Stat. § 285.11(5), and promulgate various categories

of rules related to controlling emissions, *see, e.g.*, Wis. Stat. § 285.11(9), (10), (14)–(18).

The Department of Natural Resources' obligations to control air pollution further extend to establishing air quality standards, performance standards, emission limits, and nonattainment areas, *see* Wis. Stat. §§ 285.21–.29; establishing emissions limits and standards for various air pollutants and sources, *see* Wis. Stat. §§ 285.30–.59; establishing, maintaining, and administering permitting systems, *see* Wis. Stat. §§ 285.60–.69; and taking enforcement action and imposing penalties where warranted, *see* Wis. Stat. §§ 285.81–.87.

As the Wisconsin Court of Appeals recently recognized, these statutes and the associated regulations "protect Wisconsinites' interests in breathing clean air by setting out the requirements that proposed sources that affect air quality must meet and by creating substantive standards for preserving ambient air quality." *Sierra Club v. Wis. Dep't of Nat. Res.*, 2025 WI App 39, ¶ 27, 417 Wis. 2d 90, 24 N.W.3d 157, *review granted*, 2026 WI 7, 32 N.W.3d 752.

The State of Wisconsin and its Department of Natural Resources thus adequately represent movants' interests in abating air pollution.

Movants' request to intervene as of right should be denied.

## II. Movants also fail to show that permissive intervention is appropriate, but may be able to demonstrate that participation as amicus curiae might be appropriate, in the event of further briefing.

The lack of a timely motion is dispositive as to movants' request for permissive intervention. *See Sokaogon Chippewa Cmty.*, 214 F.3d at 949–50. All the considerations discussed above (*see supra*, § I.C.) equally support denying permissive intervention.

As support for their request for permissive intervention, movants simply cite their previous arguments in support of intervention as of right. (*See* Dkt. 31-1:26.) All those arguments are addressed and refuted *supra*, § I.C.–D.

In the event the Court looks beyond the untimeliness of movants' request, the Court should exercise its discretion to deny permissive intervention, particularly in light of the substantial prejudice existing parties would suffer if intervention is allowed. *See Sokaogon Chippewa Cmty.*, 214 F.3d at 949 (recognizing that "[p]ermissive intervention under Rule 24(b) is wholly discretionary").

Instead of intervention, movants may seek leave to participate as amici, in the event further briefing or proceedings are needed between the parties. *See Sierra Club, Inc.*, 358 F.3d at 519 (denying intervention but noting

that, "[w]hen the time comes, [movant] may seek leave to participate as amicus curiae").

## CONCLUSION

The motion to intervene should be denied and the contingent motion (Dkt. 32-1) should be denied as moot.

Dated this 11th day of September 2026.

Respectfully submitted,

JOSHUA L. KAUL
Attorney General of Wisconsin

s/ Gabe Johnson-Karp
GABE JOHNSON-KARP
Assistant Attorney General
State Bar #1084731

Attorneys for Petitioner

Wisconsin Department of Justice
Post Office Box 7857
Madison, Wisconsin 53707-7857
(608) 267-8904
(608) 294-2907 (Fax)
gabe.johnson-karp@wisdoj.gov

## CERTIFICATE OF COMPLIANCE

I certify that this document complies with the format and word limit of Fed. R. App. P. 27(d)(1)–(2) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 4020 words. This document also complies with the typeface and type style requirements of Fed. R. App. P. 27(d)(1)(E), Fed. R. App. P. 32(a)(5) and (6), and Cir. R. 32(b) because this document has been prepared in a proportionally spaced typeface using Microsoft Word in 13-point font.

Dated this 11th day of September 2026.

s/ Gabe Johnson-Karp
GABE JOHNSON-KARP
Assistant Attorney General

## CERTIFICATE OF SERVICE

I certify that on September 11, 2026, I electronically filed the foregoing State of Wisconsin's Response in Opposition to Clean Wisconsin and Sierra Club's Motion for Leave to Intervene with the clerk of court using the CM/ECF system, which will accomplish electronic notice and service for all participants who are registered CM/ECF users.

Dated this 11th day of September 2026.

s/ Gabe Johnson-Karp
GABE JOHNSON-KARP
Assistant Attorney General