**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE SEVENTH CIRCUIT**

| | | |
|---|---|---|
| STATE OF WISCONSIN,<br><br>*Petitioner*,<br><br>v.<br><br>UNITED STATES ENVIRONMENTAL PROTECTION AGENCY and LEE ZELDIN, Administrator,<br><br>*Respondents*. | ) | Case No. 25-1239 |

---

**CLEAN WISCONSIN AND SIERRA CLUB'S REPLY BRIEF IN SUPPORT OF MOTION FOR LEAVE TO INTERVENE**

---

The Public Interest Organizations' Motion for Leave to Intervene is timely. Until EPA's July 28, 2026, announcement reconsidering the Reclassification Action, the Public Interest Organizations reasonably believed that their interest in the Action being upheld was adequately represented by EPA. Consistent with this Court's precedent, once those circumstances changed, the Public Interest Organizations moved swiftly to intervene.

Absent intervention, the Public Interest Organizations and their members will be severely prejudiced. The Reclassification Action requires Wisconsin to implement measures that reduce ozone in the areas where members live, work, and

recreate, and suffer harm from unhealthy ozone levels. By contrast, the existing parties face no prejudice attributable to any delay in seeking intervention.

Finally, no party in this case adequately represents the interests of the Public Interest Organizations or their members in defending the Action. EPA is no longer defending it and Wisconsin seeks its vacatur.

## I. Intervention is Timely.

This Court's timeliness inquiry focuses on four factors: (1) length of time the intervenor knew or should have known of their interest in the case; (2) prejudice to the intervenor if the motion is denied; (3) prejudice caused to the original parties by the delay; and (4) any other unusual circumstances. *Lopez-Aguilar v. Marion Cnty. Sheriff's Dep't*, 924 F.3d 375, 388 (7th Cir. 2019).

### A. Public Interest Organizations Acted Promptly Once EPA Made Clear It No Longer Adequately Represented Their Interest.

EPA's latest status report, filed after movants' intervention request, states that the agency plans to propose a new action on reconsideration, meaning it has abandoned this Reclassification Action. Status Report ¶ 6, ECF No. 38. That unknown future action will supplant the one challenged here, effectively ending this litigation absent intervention, and this Court's precedent has upheld intervention in similar circumstances. *See Crawford v. Equifax Payment Services, Inc.*, 201 F.3d 877, 879-80 (7th Cir. 2000) (allowing late intervention after proposed settlement made clear that interests were no longer adequately

represented and granting contingent motion to vacate settlement); *Flying J, Inc. v. Van Hollen*, 578 F.3d 569, 572 (7th Cir. 2009) (allowing late intervention after the government ceased defending the challenged action, no longer adequately representing prospective intervenor's interest); *see also Sierra Club v. Espy*, 18 F.3d 1202, 1206 (5th Cir. 1994) (allowing late intervention when the government's change in position made clear it no longer adequately represented prospective intervenor's interest). Notably, while EPA contends it has not abandoned the Reclassification Action, EPA Opp. at 1, ECF No. 36, Wisconsin believes it has, referring to EPA's reconsideration as "the parties' stipulated resolution." Wisconsin Opp. at 10, ECF No. 37.

Before EPA's announcement granting reconsideration on July 28, 2026, none of EPA's prior actions signaled it would abandon the Reclassification Action. In its requests for abeyance, EPA repeatedly represented that it was evaluating the matter while continuing to defend the Action. *Contra* EPA Opp. at 2. Agencies frequently seek abeyance to review pending litigation after a change in administration, which does not require taking any new positions or committing to a particular course of action—and EPA did neither here—so Public Interest Organizations were not on notice by the abeyances. In *Texas v. Dep't of Interior*, the Fifth Circuit recently held that "early signs that the Government might no longer defend" an action, including "high-level policy declarations," are not

sufficient to put parties on notice of diverging interests. No. 25-50747, 2026 WL 2672757, at *7 (5th Cir. Sept. 11, 2026). Compared to "high-level policy declarations," EPA's requests for abeyance revealed even less about EPA's potential course of action. The relevant question is not when EPA began reviewing the Action, but when Public Interest Organizations should have known that EPA would no longer adequately represent their interest in defending it.

EPA contends its February 17, 2026, status report, provided sufficient notice, referring to a potential "request for revised designations or revised boundaries for nonattainment areas in Wisconsin." EPA Opp. at 2. But that report could not have put Public Interest Organizations on notice because this case is about whether the Wisconsin nonattainment areas—as they were bounded at the August 2024 attainment deadline—failed to attain the 2015 Ozone Standard. Tellingly, the subject of revised designations or boundaries does not appear in either Wisconsin's July 16, 2026, reconsideration request nor EPA's action granting it. *See* ECF No. 29, Ex. A, Ex. B.

EPA contends its lack of opposition to Wisconsin's motion to judicially stay the Reclassification Action should have put Public Interest Organizations on notice, EPA Opp. at 3—but stays of actions pending review are routine matters that do not reflect the ultimate outcome of the case. After the stay, EPA continued defending this Action and took steps towards its defense by filing the

administrative record index in April 2026. ECF No. 28. EPA says its actions were merely consistent with the Court's order, EPA Opp. at 3, but following a court-ordered schedule is precisely what a party does when it is defending a case. The Public Interest Organizations acted prudently to preserve the Court's resources by not seeking intervention until it became clear that EPA no longer adequately represented their interests. *Espy*, 18 F.3d at 1206 ("Courts should discourage premature intervention that wastes judicial resources.").

Public Interest Organizations' interest in this case does not depend solely on dissolving the stay from the outset, *contra* EPA Opp. at 3, but instead seeks a final decision upholding the Reclassification Action, which this Court could grant without first lifting the stay. That is why Public Interest Organizations also requested summary disposition or, alternatively, expedited briefing and argument to secure a final decision before the August 3, 2027, attainment deadline. *See* Contingent Mot. at 13-20, 25-26, ECF No. 32-1. Once upheld, the Reclassification Action requires Wisconsin to implement measures to reduce ozone pollution in the nonattainment areas where Public Interest Organizations' members live, recreate, and suffer harms from unhealthy ozone levels.

The Public Interest Organizations reasonably believed that EPA would continue defending the Reclassification Action because the agency already granted reconsideration of other area reclassifications as far back as March 2025 but did

not for Wisconsin. The Reclassification Action applied nationwide to all areas that failed to attain the 2015 Ozone Standard, including the St. Louis nonattainment area, and the State of Missouri challenged it, arguing that EPA offered insufficient notice and comment. On March 5, 2025, EPA announced it was reconsidering the St. Louis reclassification, and, on June 20, 2025, EPA proposed a new action again reclassifying the St. Louis nonattainment area to Serious. 90 Fed. Reg. 26240 (June 20, 2025). EPA's conduct here stands in stark contrast. EPA could have reconsidered the Wisconsin-area reclassifications in 2025 like it did for St. Louis. It did not.

### B. Public Interest Organizations' Interests Will Be Severely Prejudiced Absent Intervention.

Denying intervention would prevent the Public Interest Organizations from defending the Reclassification Action and severely prejudice their members. The Action is judicially stayed, their members continue to suffer health harms from unhealthy ozone, and EPA's reconsideration proceedings may extend well beyond the applicable attainment deadline. For the St. Louis reclassification discussed above, EPA announced reconsideration in March 2025 and has still not taken final action almost eighteen months later. If reconsideration here follows the same timeline, the Public Interest Organizations' members could remain exposed to unhealthy ozone well beyond the August 3, 2027, attainment deadline without any final agency action requiring Wisconsin to implement measures to reduce ozone

pollution.

The harms from indefinite delay are exacerbated by EPA's legally unnecessary reconsideration. Wisconsin-certified air quality demonstrated the nonattainment areas failed to attain the 2015 Ozone Standard by the August 3, 2024, attainment deadline. Contingent Mot. at 13-20, 25-26, ECF No. 32. Thus, applying this Court's binding precedent, the Clean Air Act compels only one possible outcome: reclassification to Serious. *Sierra Club v. E.P.A.,* 311 F.3d 853, 860-62 (7th Cir. 2002) (holding that Clean Air Act compels reclassification to Serious despite interstate transport ozone contributions); *see also* Reclassification Action, 89 Fed. Reg. 101901, 101905 (Dec. 17, 2024) (attainment is based "solely by area design values as of [the attainment] date"). Reconsideration invites indefinite delay that will inflict substantial, ongoing harm to Public Interest Organizations' members unless the Court grants intervention.

Wisconsin contends that notice and comment opportunities on EPA's forthcoming reconsideration proposal are sufficient to protect Public Interest Organizations' interest in this case. Wisconsin Opp. at 12. But the ongoing harms to Public Interest Organizations' members can only be redressed by the Reclassification Action being upheld by this Court. They cannot be redressed by indefinite delay and indeterminate reconsideration proceedings, which, judging by the 18-month-plus reconsideration process for St. Louis, may mean no enforceable

measures to reduce ozone in the nonattainment areas for years.

Neither Wisconsin nor EPA contest that Public Interest Organizations' members' harms are concrete or cognizable. Instead, Wisconsin contends that the Reclassification Action will not redress those harms, citing interstate ozone transport, an issue already foreclosed by this Court's precedent. Wisconsin Opp. at 13; *Sierra Club,* 311 F.3d at 860-62 (holding that, given the Act's clear language, interstate ozone emissions cannot justify delaying reclassification). And the Reclassification Action will reduce ozone by imposing ozone emission reduction requirements applicable to the nonattainment areas. 89 Fed. Reg. at 101903 (explaining that Wisconsin must "demonstrate how the area will attain the NAAQS as expeditiously as practicable, but no later than August 3, 2027, the Serious area attainment date."). Recent emissions data shows that there are thousands of tons of nitrogen oxides (NOx) and volatile organic compounds (VOC)—the two ozone precursors—emitted in the Wisconsin nonattainment areas. *See* Supp. Gallagher. Dec. ¶¶ 4-7, Ex. H. Those sources of ozone pollution will face stricter requirements under the Reclassification Action.

The D.C. Circuit resoundingly rejected a similar argument in Clean Wisconsin's successful challenge to EPA's initially inadequate Wisconsin nonattainment designations: "[M]ore ozone is more ozone, and there is no threshold concentration below which ground-level ozone is known to be harmless"

and therefore "EPA's decision to forgo stricter controls on emitters in these areas will expose [Public Interest Organizations' members] to higher ozone levels." *Clean Wisconsin v. EPA*, 964 F.3d 1145, 1158 (D.C. Cir. 2020). "By preserving the status quo rather than demanding stricter pollution controls, EPA's designations increase the likelihood that Environmental Petitioners' members will experience ozone-related injuries." *Id*. at 1157.

### C. Existing Parties Are Not Prejudiced by Intervention.

Wisconsin contends that Public Interest Organizations' intervention should be denied because it could prejudice Wisconsin and EPA's alleged "stipulated resolution," Wisconsin Opp. at 9-10, but this Court has allowed late intervention for that exact purpose before. For example, in *Crawford*, there were three class action lawsuits with overlapping classes. The plaintiff in *Crawford* sought district court approval of a settlement, compelling plaintiffs in the other actions to seek intervention and to file a contingent motion challenging approval of the settlement. 201 F.3d at 879-80. Though the district court denied the motion as untimely, this Court found that the intervention was timely because it was filed 23 days after the proposed settlement first revealed that the intervenors' interests were no longer adequately represented by the *Crawford* plaintiff. *Id.* at 880-81. The same principles apply here: Public Interest Organizations moved to intervene shortly after EPA's July 28, 2026 announcement made clear, for the first time, that EPA

could no longer adequately represent their interests. *See Texas*, 2026 WL 2672757, at *7 (timeliness judged from when government made clear it was considering settlement options that could vacate agency action).

Wisconsin's theory of prejudice was also rejected in *Crawford*, where this Court held that "[t]he possibility that [the court] would see merit to [intervenors'] appeal" of the settlement "cannot be called prejudice," and this Court then granted the contingent motion and vacated the approval of the settlement. *Crawford*, 201 F.3d at 881-82. This Court reiterated the same point in *Lopez-Aguilar*, explaining that because the existing parties "would have been burdened in precisely the same manner had . . . [the] motion to intervene been filed [sooner]," the alleged prejudice would not justify denying intervention. *Lopez-Aguilar*, 924 F.3d at 390 (citing *Nissei Sangyo Am., Ltd. v. U.S.*, 31 F.3d 435, 439 (7th Cir. 1994)). "Prejudice must be measured by the delay in seeking intervention, not the inconvenience to the existing parties of allowing the intervenor to participate in the litigation." *Texas*, 2026 WL 2672757, at *8 (cleaned up).

The Public Interest Organizations ask the Court to consider the merits of the Reclassification Action—what Wisconsin sought when it filed its petition for review. Wisconsin and EPA's alleged "stipulated resolution" would have faced the same scrutiny if the Public Interest Organizations intervened earlier. Thus, "delayed intervention" would not cause the type of prejudice Wisconsin asserts.

Wisconsin's reliance on *Sierra Club v. EPA*, 358 F.3d 516 (7th Cir. 2004) for denying intervention is misplaced. Wisconsin Opp. at 2, 11. In *Sierra Club*, this Court denied intervention because the movant asserted only a general interest in "more business and less environmental regulation" rather than "any direct interest in the outcome" of the litigation. 358 F.3d at 518. Public Interest Organizations, by contrast, seek to defend the Reclassification Action because it will require Wisconsin to implement measures to reduce ozone pollution, thus remedying their members' exposure to harmful ozone pollution, a concrete legal interest that no party challenges.

Wisconsin's reliance on *Lopez-Aguilar* is misplaced for similar reasons. There, this Court allowed late intervention for the purpose of challenging a proposed settlement based on "all the circumstances," which were "not limited to chronological considerations." *Lopez-Aguilar,* 924 F.3d at 388; *contra* Wisconsin Opp. at 10. Wisconsin also cited *Lopez-Aguilar* to contend that adequate representation is irrelevant to the timeliness inquiry. *Id*. But this Court's precedent considers adequate representation when, as here, one party initially represented a prospective intervenor's interest and later circumstances made that representation inadequate. *See Crawford*, 201 F.3d at 880-881; *Flying J*, 578 F.3d at 572; *see also Zeigler Coal Co. v. Off. of Workers' Comp. Programs*, 490 F.3d 609, 610 n.1 (7th Cir. 2007) (finding good cause to grant late intervention under Rule 15(d) even

when motion to intervene was filed over a year after petition for review was filed and case had been argued).

### D. Public Interest Organizations' History of Advocacy on Wisconsin Ozone Implementation Supports Intervention.

Wisconsin argues that no "unusual circumstances" weigh in favor of Public Interest Organizations' intervention, Wisconsin Opp. at 15-16, but a few days ago the Fifth Circuit identified one unusual circumstance that also applies here: the prospective intervenors' history of advocacy on issues related to the challenged action. *Texas*, 2026 WL 2672757, at *8 (holding that prospective intervenor's decades-long efforts advocating for promulgation of the challenged rule represent an "unusual circumstance" weighing in favor of intervention). Here, Clean Wisconsin has a long history of advocating on 2015 Ozone Standard-implementation issues, most notably their successful challenge to EPA's original and unlawful designations of some Wisconsin nonattainment areas. *See Clean Wisconsin,* 964 F.3d at 1170-76.

## II. Wisconsin Does Not Adequately Represent Public Interest Organizations' Interests.

Wisconsin's contention that it adequately represents Public Interest Organizations' interest because the state has an interest in "abating ozone pollution," Wisconsin Opp. at 17, manages to both "simultaneously overstate the [Public Interest Organizations'] burden to establish inadequate representation and

understate the divergence between their interest[s].” *Texas*, 2026 WL 2672757, at *9. Public Interest Organizations’ interest is to defend the Reclassification Action so that its emission reductions can take effect, while Wisconsin actively seeks vacatur. *Id*. (“Adversity of interest can be established simply by showing that an intervenor’s interests diverge from the putative representative’s interests in a manner germane to the case.”) (cleaned up).

Dated: September 18, 2026

*/s/ Jeffrey Hammons*
Jeffrey Hammons
Clean Air Task Force
114 State Street, 6th Floor
Boston, MA 02109
(771) 241-6481
jhammons@catf.us

*Counsel for Respondent-Intervenor Applicant Clean Wisconsin*

*/s/ Priyam Desai*
Priyam Desai
Sierra Club
2101 Webster St., Ste. 1300
Oakland, CA 94612
(415) 294-0910
priyam.desai@sierraclub.org

*Counsel for Respondent-Intervenor Applicant Sierra Club*

**CERTIFICATE OF COMPLIANCE**

I certify that this motion complies with the type-volume limitation of Federal Rules of Appellate Procedure 27(d)(1)-(2) because, excluding the parts exempted under Federal Rules of Appellate Procedure 27(d)(2) and 32(f), it contains 2594 words. Per Federal Rule of Appellate Procedure 27(d)(1)(E), I certify that this motion complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this motion has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font. I further certify that this motion has been scanned for viruses and is virus-free.

Dated: September 18, 2026

*/s/ Jeffrey Hammons*
Jeffrey Hammons
Clean Air Task Force
114 State Street, 6th Floor
Boston, MA 02109
(771) 241-6481
jhammons@catf.us

## CERTIFICATE OF SERVICE

I certify that on September 18, 2026, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users, and that service will be accomplished by the CM/ECF system.

*/s/ Jeffrey Hammons*
Jeffrey Hammons
Clean Air Task Force
114 State Street, 6th Floor
Boston, MA 02109
(771) 241-6481
jhammons@catf.us