No. 25-1239

IN THE UNITED STATES COURT OF APPEALS

FOR THE SEVENTH CIRCUIT

STATE OF WISCONSIN,

Petitioner,

v.

UNITED STATES ENVIRONMENTAL PROTECTION AGENCY and LEE ZELDIN, Administrator, United States Environmental Protection Agency,

Respondents.

**STATE OF WISCONSIN'S RESPONSE IN OPPOSITION TO CLEAN WISCONSIN AND SIERRA CLUB'S MOTION TO DISSOLVE STAY, FOR SUMMARY DISPOSITION OR, IN THE ALTERNATIVE, EXPEDITED BRIEFING, AND TO LIFT THE ABEYANCE**

## INTRODUCTION

Over a month before Intervenors moved to participate in this case, the State of Wisconsin and the United States Environmental Protection Agency (EPA) reached a conceptual resolution of this case. Wisconsin previously submitted a petition to EPA for administrative reconsideration of the Rule at issue in this

case.[1] That Rule would have reclassified parts of Wisconsin as being in "serious" nonattainment of the air quality standard for ozone, and would have significant repercussions for Wisconsin residents, businesses, and the State itself. Wisconsin challenged the Rule on multiple grounds, including that it had not undergone notice and comment. This Court granted Wisconsin's request to stay the Rule.

Separately, EPA granted Wisconsin's request for administrative reconsideration and informed this Court that it is "undertak[ing] a notice-and-comment action to reconsider" the Rule. (Dkt. 29:18.)

Following EPA's announcement of reconsideration and in light of the upcoming notice-and-comment action, the parties agreed that Wisconsin's challenge to the Rule could be placed in abeyance during the pendency of EPA's reconsideration.

Intervenors now ask this Court to unwind all of this. They ask the Court to lift the abeyance to which both the State and federal governments have stipulated; dissolve the stay this Court ordered; and summarily affirm the Rule (notwithstanding that EPA is already reconsidering that Rule). This Court should deny each of Intervenors' three requests.

---

[1] The Rule at issue is titled, Findings of Failure To Attain and Reclassification of Areas in Illinois, Indiana, Michigan, Ohio, and Wisconsin as Serious for the 2015 Ozone National Ambient Air Quality Standards, 89 Fed. Reg. 10,1901 (Dec. 17, 2024).

For one, the question of lifting the abeyance must be answered at the threshold. Intervenors' cursory argument on this point, buried at the end of their motion fails to show why this Court should unwind the parties' stipulated agreement and force the parties to litigate a case that is already well on its way to resolution. None of the criteria for lifting the abeyance are met here. And maintaining abeyance necessarily means that the stay should not be lifted and the Court should not address the merits of the Rule, much less summarily affirm.

Second, even if this Court would look past Intervenors' failure to support lifting the abeyance, they also don't show why this Court should lift the stay of the Rule, particularly now that EPA plans to reconsider—and, necessarily, in so doing, eventually supersede—that Rule through the current reconsideration action. The same factors that supported a stay a year ago support continuing the stay. The Rule, if allowed to take effect, would impose substantial, irreparable harms on Wisconsin residents and businesses; Wisconsin has already demonstrated a strong likelihood of success (indeed, EPA has already granted some of the relief Wisconsin sought in filing this case). And both the effect on nonmovants and the public interest also favor maintaining the stay while EPA undertakes its reconsideration action.

Third, while this Court should not lift the abeyance and dissolve the stay, if it were to do so, the Court should deny Intervenors' request for summary

disposition and order merits briefing at that time on an expedited schedule. Upon such order, Wisconsin would be prepared to file its merits brief on an expedited schedule, allowing the Court to fully assess the multiple flaws in the Rule, beyond what can reasonably be argued in motion briefing.

However, the Court should not reach that point at all. Given EPA's commitment to reconsider the Rule and the parties' continuing agreement to abate litigation in this case, Intervenors' motion should be denied in its entirety.

## BACKGROUND

For years, Wisconsin has been presenting EPA with sound, largely undisputed analyses showing that out-of-state emissions are responsible for the majority of human-caused ozone present in southeastern Wisconsin along Lake Michigan's shoreline. (*See* Dkt. 12:48–49[2] (listing some communications in the past five years); *see also* Dkt. 12:74–89); Letter from Gail Good, Director, Air Mgmt., Wis. Dep't of Nat. Res., to Michael S. Regan, Adm'r, EPA, 1 (June 10, 2022), https://www.regulations.gov/comment/EPA-HQ-OAR-2021-0742-0178. Those analyses show that Wisconsin's difficulty attaining the Clean Air Act's ozone standards is due primarily to out-of-state emissions and indicate that imposing restrictions on Wisconsin-based sources of ozone

[2] Page numbers for Dkt. 12 refer to the PDF pagination, not the pagination at the bottom of the pages.

precursors would not meaningfully change ozone levels. (*See, e.g.*, Dkt. 12:68, 76, 79–80); *see also* 88 Fed. Reg. 36,654, 36,705–06 (June 5, 2023) (Good Neighbor Plan); *id.* at 36,741–43.

In other words, to control ozone levels in southeastern Wisconsin, EPA must regulate sources *upwind* of Wisconsin, not impose more regulations on Wisconsin itself. *See* Letter from Gail Good, Director, Air Mgmt. Program, Wis. Dep't Nat. Res., to Robert Kaplan, Acting Reg'l Adm'r, EPA - Region 5, 1 (Apr. 20, 2017), https://www.regulations.gov/document/EPA-HQ-OAR-2017-0548-0051; *see also* Angela F. Dickens, *Conceptual Models of Ozone Formation in the Great Lakes Region*, 18 (Feb. 2023), https://www.ladco.org/wp-content/uploads/Projects/Ozone/Ozone-conceptual-model-report-FINAL-Feb-2023.pdf.

EPA acknowledges as much, recognizing that Wisconsin is responsible for only 8–16% of ozone measured at the State's nonattaining monitors, while emissions transported from other states contribute 42–48%. (*See* Dkt. 12:76.)

Wisconsin filed its petition challenging the Rule in this case as part of its continuing effort to require EPA to regulate those upwind emissions that are pouring into southeastern Wisconsin, causing adverse impacts to Wisconsin residents and businesses. (*See* Dkt. 1; 12.) Wisconsin moved to stay the Rule, based on the significant adverse impacts the Rule would have on the State and Wisconsin residents and businesses, as well as multiple legal flaws inherent in

the Rule. (*See* Dkt. 12.) This Court granted Wisconsin's request for a stay, and the Rule has been stayed since September 2025. (Dkt. 16.)

Wisconsin also asked EPA to reconsider the Rule. (*See* Dkt. 29.) EPA granted Wisconsin's request and committed "to undertake a notice-and-comment action to reconsider" the Rule. (Dkt. 29:18.) EPA is now more than 90 days into its reconsideration and recently notified the Court that, as part of its reconsideration, the Agency is "currently working on the new action." (Dkt. 45:2.)

Based on EPA's commitment to reconsider its Rule, this Court placed this case in abeyance, subject to updates every 45 days. (Dkt. 30.) About a month later, Intervenors moved to lift the abeyance, dissolve the stay, and summarily affirm the Rule that EPA is now reconsidering. (Dkt. 32.)

## ARGUMENT

### I. This Court should not lift the abeyance because EPA is months into its reconsideration and the agency plans to undertake notice and comment soon.

In asking this Court to lift the stay and summarily affirm the Rule, Intervenors largely ignore the threshold question of whether this Court should remove this case from abeyance. Because Intervenors offer no persuasive argument in support of lifting the abeyance, their request to do so can be summarily denied, which, in turn, should mean their other requests should be denied as long as the case remains in abeyance. But even if this Court would

consider anew whether continued abeyance is appropriate, all relevant factors support continuing to hold this case in abeyance while EPA completes its reconsideration of the Rule.

### A. Intervenors provide no basis to lift the abeyance and fail to show that this Court abused its discretion in placing the case in abeyance.

"It is a cardinal virtue of Article III courts to avoid unnecessary decisions and to promote voluntary resolutions where appropriate." *Ctr. for Biological Diversity v. EPA*, 56 F.4th 55, 71 (D.C. Cir. 2022). Allowing resolution without a court's intervention "conserve[s] judicial resources" and "comports with our theoretical role as the governmental branch of last resort." *Am. Petroleum Inst. v. EPA*, 683 F.3d 382, 386–87 (D.C. Cir. 2012) (citation omitted). Courts regularly grant abeyance when the object of judicial review is an agency rule or action that is subject to reconsideration, revision, or repeal. *See Ctr. for Biological Diversity*, 56 F.4th at 71.

Whether to hold a case in abeyance "is . . . a matter of discretion and judgment," in which courts balance "the optimal use of judicial resources" and the interests of the parties. *Utah by & through Cox v. EPA*, No. 23-1157, 2025 WL 1354371, *1 (D.C. Cir. May 2, 2025) (Statement of Rao, J.) (citing *Landis v. N. Am. Co.*, 299 U.S. 248, 254–55 (1936)).

Intervenors' entire argument in support of lifting the abeyance consists of two sentences, without any argument as to why this Court was wrong to grant

abeyance in the first place or why the Court should change course now. (*See* Dkt. 32-1:25–26.) They simply assert that abeyances "are at the sole discretion of the courts," and that the Clean Air Act includes a policy favoring "'immediate' judicial review of challenges to EPA actions." (Dkt. 32-1:25 (quoting *Nat. Res. Def. Council v. EPA*, 643 F.3d 311, 320 (D.C. Cir. 2011)).) Neither principle supports lifting the abeyance here.

To be sure, abeyance is squarely within the Court's discretion, but this Court already exercised its discretion to *grant* abeyance. (*See* Dkt. 30.) So Intervenors need to show why this Court was wrong then and why it should now reverse course. *See Nken v. Holder*, 556 U.S. 418, 433–34 (2009) (recognizing that party seeking discretionary relief "bears the burden of showing that the circumstances justify an exercise of that discretion"). Their one-sentence quotation fails to carry that burden.

Intervenors' other one-sentence argument about a preference for "immediate" judicial review under the Clean Air Act also doesn't support their request to lift the abeyance. (Dkt. 32-1:25 (citation omitted).) Indeed, in the case they cite, the court recognized that "the interest in preserving the integrity of the notice and comment process *strongly outweighs* any concern about delay," so the court declined to weigh in on one of the procedures at issue that was expected to undergo notice and comment. *See Nat. Res. Def. Council*, 643 F.3d at 321 (emphasis added). Moreover, in that case, the petitioner and

respondent had not stipulated to abeyance, *see id.*, whereas here, both parties agreed that abeyance is appropriate pending EPA's reconsideration of the Rule (*see* Dkt. 29).

With no attempt to or ability to show that this Court abused its discretion in granting abeyance, and no real argument for lifting the abeyance, Intervenors' motion should be denied in full.

**B. Even if this Court would revisit its decision to place this case in abeyance, all relevant considerations support continued abeyance.**

Even if this Court would consider abeyance anew (which, for the reasons just discussed, it need not), the same factors—and more—support abeyance now as they did three months ago.

**1. Courts favor abeyance where an agency rule or policy is likely to be reconsidered or to change.**

The "basic rationale" for abeyance is that, "through avoidance of premature adjudication," courts can avoid "entangling themselves in abstract disagreements over administrative policies . . . until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." *Devia v. Nuclear Regul. Comm'n*, 492 F.3d 421, 424 (D.C. Cir. 2007) (quoting *Abbott Labs. v. Gardner*, 387 U.S. 136, 148–49 (1967)). If courts "let[ ] the administrative process run its course" before attempting to resolve a dispute, *Am. Petroleum Inst.*, 683 F.3d at 386, courts

"may never need to," thereby preserving judicial resources and preserving the role of the courts "as the governmental branch of last resort," *Devia*, 492 F.3d at 424 (quoting *Nat'l Treasury Emps. Union v. United States*, 101 F.3d 1426, 1431 (D.C. Cir. 1996)).

When assessing the propriety of abeyance, courts commonly evaluate two prudential considerations of ripeness: (1) the fitness of the issues for immediate review; and (2) the hardship to the parties of withholding judicial review.

The fitness requirement protects "the agency's interest in crystallizing its policy before that policy is subjected to judicial review and the court's interests in avoiding unnecessary adjudication and in deciding issues in a concrete setting." *Am. Petroleum Inst.*, 683 F.3d at 387 (quoting *Wyo. Outdoor Council v. U.S. Forest Serv.*, 165 F.3d 43, 49 (D.C. Cir. 1999)). Courts decline to review agency positions that are likely to change because doing so "denie[s]" the agency the "full opportunity to apply its expertise and to correct errors or modify positions in the course of a proceeding." *Id.* (quoting *Pub. Citizen Health Rsch. Grp. v. Comm'r, Food & Drug Admin.*, 740 F.2d 21, 31 (D.C. Cir. 1984)). This, in turn, threatens "the integrity of the administrative process . . . by piecemeal review of the substantive underpinnings of a rule," while also frustrating judicial economy, since review might ultimately "prove unnecessary if persons seeking such review are able to convince the agency to

alter a tentative position." *Id.* (quoting *Pub. Citizen Health Rsch. Grp.*, 740 F.2d at 31).

For hardship to the parties, courts "will generally presume there is no hardship and grant abeyance" when the party challenging a rule does not oppose abeyance. *Utah by & through Cox*, 2025 WL 1354371, at *2; *see also Mississippi v. EPA*, 744 F.3d 1334, 1341 (D.C. Cir. 2013). Interests of intervenors "are generally not part of the hardship inquiry." *Utah by & through Cox*, 2025 WL 1354371, at *2 n.1; *see also Devia*, 492 F.3d at 427 (rejecting intervenors' request to override petitioner and respondent's stipulated abeyance, noting intervenors cited "no case" in which court considered the hardship to an intervenor "of deferring a decision on a challenger's petition"); *Ohio Forestry Ass'n v. Sierra Club*, 523 U.S. 726, 733 (1998).

In addition to these factors, courts considering abeyance generally recognize that any hardship that might occur by virtue of deferred judicial review can be mitigated by placing guardrails on continued abeyance—typically in the form of status updates from the agency whose rule is at issue. *See, e.g.*, *Am. Petroleum Inst.*, 683 F.3d at 389–90.

### 2. This Court should maintain the abeyance because EPA has committed to undertake notice and comment and continues to make progress on its reconsideration of the Rule.

If this Court undertakes a renewed assessment of whether abeyance is appropriate, all relevant considerations favor continued abeyance.

First, in light of EPA's commitment to reconsider the Rule and undertake notice and comment, the issues presented in this case are not presently fit for judicial review. Proceeding with judicial review now would require expenditure of limited judicial resources reviewing a Rule that may change through administrative reconsideration, while also denying EPA the "full opportunity to apply its expertise" following notice and comment and to potentially "correct errors or modify positions" embodied in the current Rule. *Am. Petroleum Inst.*, 683 F.3d at 387 (quoting *Pub. Citizen Health Rsch. Grp.*, 740 F.2d at 31).

Second, neither of the principal parties—EPA and Wisconsin—faces hardship by continued abeyance, as demonstrated by their stipulated original request and continued updates requesting to maintain the abeyance. (Dkt. 29; 38; 45.)

Intervenors don't discuss hardship in connection with their argument to lift the abeyance. (*See* Dkt. 32-1:25–26.) In any event, when considering hardship to "the parties" for purposes of abeyance, courts typically do not consider alleged harm to intervenors who, by definition, are neither the challenger to

agency action nor the agency whose action is being challenged. *See Devia*, 492 F.3d at 427 (citation omitted); *see also Utah by & through Cox*, 2025 WL 1354371, at *2 n.1.

The alleged hardships that Intervenors do discuss come up in the context of their argument about dissolving the stay and relate to alleged impacts on health and welfare. (*See* Dkt. 32-1:20–21.) While those alleged hardships should not factor into an assessment of hardship for abeyance purposes, even if the Court would consider them, Intervenors would need to show that the hardships they face *by abeyance* are "immediate and significant." *Devia*, 492 F.3d at 427–28 (quoting *Action All. of Senior Citizens of Greater Pa. v. Heckler*, 789 F.2d 931, 940 (D.C. Cir. 1986)).

But the health- and welfare-based impacts Intervenors raise are not caused by abeyance—they are allegedly caused by long-term effects of exposure to ozone and other pollutants. (*See* Dkt. 32-1:20–21.) Given the substantial questions about the efficacy of the Rule in controlling ozone *at all* (*see* Dkt. 12:14–16, 25–27), Intervenors fail to show that continued abeyance poses any "immediate and significant" hardship (*see* Dkt. 32-1:20–21), much less enough to overcome the two principal parties' unified support for abeyance.

Finally, in addition to best serving the goals of fitness of the issues and avoiding hardship to the parties, continuing the abeyance here best serves practical and pragmatic considerations. Continuing the abeyance would be

consistent with how federal courts regularly handle challenges to agency rules or actions where the agency has committed to a new rulemaking process. *See, e.g.*, *Wheaton Coll. v. Sebelius*, 703 F.3d 551, 552 (D.C. Cir. 2012) (granting abeyance where government represented that it would publish new notice of proposed rulemaking in coming months and issue final rule within the following year); *Am. Petroleum Inst.*, 683 F.3d at 386–90.

This is not a situation in which EPA has been seeking to "perpetually dodge review" by initiating multiple proposed rulemakings. *See id.* at 388. To the contrary, EPA's past practice illustrates precisely why EPA was correct to reconsider here and to undertake notice and comment. In previous, similar rulemakings "bumping up" regulations imposing increasing levels of severity of ozone nonattainment, EPA *did* undertake notice and comment—including for areas in Wisconsin—so this Rule was the outlier, and EPA was correct to change course. *See* 81 Fed. Reg. 91,841 (Dec. 19, 2016) (proposing to reclassify one of the counties impacted by this Rule to Moderate nonattainment under the 2008 ozone standards; providing period for public comment); 87 Fed. Reg. 60,897, 60,904 (Oct. 7, 2022) (reclassifying five Wisconsin areas from Marginal to Moderate nonattainment following notice and comment; responding to

comments about redesignation of Wisconsin areas).[3] This is precisely why both Wisconsin and EPA stipulated to the existing abeyance—to allow EPA time to do what it should have done in the first place.

If EPA's reconsideration and rulemaking "take[ ] an unforeseen turn," any such developments would be noted in the existing 45-day updates this Court already ordered, if not sooner, in which case this Court would have the opportunity to "reassess whether the dispute has ripened at that time." *Am. Petroleum Inst.*, 683 F.3d at 389. But for now, judicial economy, the parties' interests, and the interests of the regulated community will be best served by maintaining the abeyance while EPA continues and completes its reconsideration, "subject to regular reports from EPA on its status." *Id.*

## II. If the Court lifts the abeyance, it should not dissolve the stay.

Fifteen months ago, this Court correctly stayed the Rule and Intervenors offer nothing to show that this Court abused its discretion when it did so. But even if this Court would revisit the stay factors, the same considerations that

---

[3] *See also, e.g.*, 89 Fed. Reg. 66,291 (Aug. 15, 2024) (proposing to find the Los Angeles nonattainment area had failed to attain); 88 Fed. Reg. 775 (Jan. 5, 2023) (reclassifying the Las Vegas, Nevada area as moderate attainment following notice and comment); 87 Fed. Reg. 60,926 (Oct. 7, 2022) (reclassifying five Serious nonattainment areas to Serious nonattainment areas following notice and comment); 85 Fed. Reg. 6491 (Feb. 5, 2020) (proposing to reclassify the Shoreline Sheboygan, Wisconsin area as Serious nonattainment); 84 Fed. Reg. 70,897 (Dec. 26, 2019) (reclassifying areas of Colorado as Serious nonattainment following notice and comment); 83 Fed. Reg. 56,781 (Nov. 14, 2018) (proposing to reclassify seven Moderate nonattainment areas to Serious nonattainment).

supported a stay 15 months ago continue to support a stay of the Rule, and intervening developments only add support for the stay.

### A. Intervenors have not shown that this Court abused its discretion when granting the stay 15 months ago.

As a threshold matter, Intervenors' argument about dissolving the stay rushes to the merits of whether a stay is warranted, but ignores the procedural posture. (*See* Dkt. 32-1:13–24.) They argue that the four factors don't support a stay, but this argument fails to explain why the Court should *lift* the stay it already granted. The controlling question is not whether a stay should be granted, but whether this Court abused its discretion when it granted the stay that is currently in place.

Without even confronting that issue, Intervenors fail to show any abuse of discretion and fail to support their request to dissolve the stay. This Court could therefore reject any further challenge to the stay as undeveloped and thus waived. *See Crespo v. Colvin*, 824 F.3d 667, 674 (7th Cir. 2016).

### B. Even if this Court would reassess the propriety of a stay, the same factors that supported a stay 15 months ago—and others—support continuing the stay now.

If this Court would consider anew whether a stay of the Rule remains appropriate, the four factors all support continuing the stay: (1) there is not only a likelihood of success, but Wisconsin already has obtained some success by virtue of EPA committing to reconsider the Rule; (2) Wisconsin and its

residents and local businesses face irreparable harm if the Rule is allowed to take effect now; (3) the risk of harm to the nonmovant if the Rule is stayed pending an opportunity for comment; and (4) the public interest will be best served by delaying the imposition of onerous and largely ineffectual burdens on Wisconsin businesses and residents. *See Nken*, 556 U.S. at 434.

### 1. Wisconsin has already obtained some success through EPA's commitment to reconsider the Rule and undertake notice and comment.

In its initial motion for a stay, Wisconsin highlighted the lack of notice and comment as a principal flaw supporting the likelihood of success on the merits. (Dkt. 12:19–25.) EPA did not dispute that (Dkt. 14), and this Court granted a stay based on Wisconsin's motion and EPA's non-opposition (Dkt. 16).

Now, EPA has granted one component of the relief Wisconsin sought by committing to "undertake a notice-and-comment action to reconsider the [Rule]." (Dkt. 29:18–19.) Thus, in addition to the legal flaws that Wisconsin previously highlighted in support of a stay (*see* Dkt. 12:25–30), which already established a strong *likelihood* of success, Wisconsin now also has actually obtained some measure of *existing* success by virtue of EPA committing to grant part of the relief Wisconsin sought. This factor—in conjunction with grounds previously briefed (Dkt. 12)—squarely supports maintaining the stay. *See Nken*, 556 U.S. at 434.

### 2. Wisconsin, its residents, and its businesses face irreparable harm if the Rule is allowed to take effect.

In previous briefing, Wisconsin explained the irreparable harms that the State, its residents, and its businesses would suffer if the Rule had not been stayed. (*See* Dkt. 12:27–29, 40–48.) In short, the Rule's more stringent permitting requirements would impose significant costs on Wisconsin businesses and residents, and would create costly, time-consuming requirements for the State. (*See* Dkt. 12:27–29, 40–48.) EPA did not dispute these impacts (Dkt. 14), and this Court accounted for these harms when it granted the initial stay (Dkt. 16).

In their motion, Intervenors do not even try to explain why the millions of dollars of irrecoverable costs for the State and Wisconsin businesses do not support a stay. (Dkt. 32-1:23–24.) Instead, they say the types of costs that Wisconsin previously identified (Dkt. 12:27–29, 40–48), are merely the expected "costs of complying" with federal law and therefore do not constitute irreparable harm (Dkt. 32-1:23–24).

Intervenors' arguments about compliance costs are patently incorrect as a matter of law and common sense. Courts regularly stay administrative rules based on nearly identical compliance costs, recognizing that "complying with a regulation later held invalid almost *always* produces the irreparable harm of

nonrecoverable compliance costs." *Texas v. EPA*, 829 F.3d 405, 433 (5th Cir. 2016) (quoting *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 220–21 (1994) (Scalia, J., concurring in part and in the judgment); *see Ala. Ass'n of Realtors v. Dep't of Health & Hum. Servs.*, 594 U.S. 758, 765 (2021) (recognizing that monetary loss "with no guarantee of eventual recovery" constituted "irreparable harm" to support stay of administrative action); *see also Ohio v. EPA*, 603 U.S. 279, 291–92 (2024) (discussing irreparable harm in support of stay of rule under Clean Air Act, acknowledging costs of "complying with [federal Clean Air Act requirements] during the pendency of this litigation" would require States and regulated entities to incur millions or billions in compliance costs).

Intervenors offer nothing to suggest that either Wisconsin or the impacted businesses could recover the millions of dollars of costs of complying with the Rule. (*See* Dkt. 32-1:24.) Instead, they suggest that those losses involve a "long chain of speculation and the unknown acts of third parties" (Dkt. 32-1:24), but that ignores both common sense and the record.

As a matter of common sense, complying with a new technology-forcing regulation will necessarily involve costs of implementing new technologies required by the regulation. *See, e.g.*, *Ohio*, 603 U.S. at 291 (discussing "hundreds of millions, if not billions of dollars" in expected costs of complying with rule under Clean Air Act). The record confirms this, with testimony from

the State's Director of the Bureau of Air Management explaining that if the Rule were allowed to take effect, the "cost to the State could reach $11 million," and permitting costs to businesses alone would reach nearly $7 million. (Dkt. 12:41–42.) And those permitting costs are separate from the addition millions in costs of implementing updated technology to comply with the Rule's new requirements. (*See* Dkt. 12:41–48.)

Intervenors' attempt to wave off these costs as "only ordinary costs of complying" with federal law does not support lifting the stay. (Dkt. 32-1:23.)

#### 3. The remaining stay factors (harm to nonmovants and the public interest) also support maintaining the stay.

Because likelihood of success and irreparable harm to Wisconsin are the "most critical" factors in determining whether a stay is warranted, *Nken*, 556 U.S. at 434, the preceding discussion is sufficient to sustain the stay. But even if this Court would analyze the possibility of harm to nonmovants and the public interest, *see id.*, Intervenors do not persuasively explain why either supports lifting the stay. (Dkt. 32-1:20–23.)

As to any harm to nonmovants, Intervenors present no evidence that the continued stay would harm them. (Dkt. 32-1:20–23.) Intervenors want reductions in ozone in Wisconsin, but as Wisconsin has consistently argued, there is serious doubt whether the Rule's regulation of Wisconsin-based sources will produce *any* meaningful reductions in ozone in Wisconsin, since

out-of-state sources continue to contribute predominating amounts of ozone precursors that travel unrestricted into Wisconsin. (*See* Dkt. 12:68, 76, 79–80); *see also* Angela F. Dickens, *supra*, at 112–16; Letter from Gail Good, *supra*. Intervenors' speculative harms are therefore insufficient to overcome the "critical" factors supporting maintaining the stay. *See Nken*, 556 U.S. at 434.

The same goes for the public interest. For one thing, the public interest always favors minimizing unnecessary infringement on a state's sovereign interests, such as when a state is required to implement a federal regulatory program such as this. *Cf. Ohio*, 603 U.S. at 291; *see also Maryland v. King*, 567 U.S. 1301, 1303 (2012) (Roberts, C. J., in chambers).

Intervenors claim that the public interest favors "clean air and healthy communities" (Dkt. 32-1:22), and, indeed, such considerations are in the public interest. But as explained here and previously, there is substantial question whether this Rule actually serves those interests, given its failure to adequately control upwind emissions and its imposition of costly and largely futile mandates on Wisconsin businesses and the State while out-of-state sources continue to send ozone precursors into the State. (*See* Dkt. 12:41–48, 68, 76, 79–80.) Given the likely futility of regulating Wisconsin sources, the public's interest strongly favors maintaining the stay while EPA reassesses how best to control ozone throughout the Lake Michigan region.

Moreover, the fact that Wisconsin and its regulated community have been operating under a stay of the Rule provides an additional, equitable basis to continue the stay. Changing course now, while EPA is in the process of reconsidering the Rule, presents a serious risk of whiplash for those subject to the Rule in the event EPA ultimately promulgates a Rule that accounts for Wisconsin's unique ozone-transport situation and thus appropriately regulates upwind sources, rather than those in Wisconsin. *Cf. Portland Cement Ass'n v. EPA*, 665 F.3d 177, 189 (D.C. Cir. 2011) (granting stay where EPA planned to reconsider rule, recognizing that "the standards could likely change substantially" and "industry should not have to build expensive new containment structures until the standard is finally determined").

## III. If the Court lifts the abeyance and dissolves the stay, the State of Wisconsin requests an opportunity to brief the merits of the Rule.

Despite EPA's reconsideration of the Rule, and despite the Rule currently being stayed, and despite this Court's order holding this case in abeyance, Intervenors ask this Court to summarily affirm the Rule or, in the alternative, order expedited briefing on the merits. Their request should instead be denied for all the threshold reasons discussed above, without reaching the merits of the case. In the event this Court wishes to consider Intervenors' arguments about the validity of the Rule moving forward, Wisconsin asks this Court to

order merits briefing on a schedule set by the Court, so that the State—as the petitioner—may file a full-length merits brief.

## CONCLUSION

This Court should deny Intervenors' requests to lift the abeyance, to dissolve the stay, and to summarily dispose of Wisconsin's petition challenging the Rule.

Dated this 6th day of November 2026.

Respectfully submitted,

JOSHUA L. KAUL
Attorney General of Wisconsin

s/ Gabe Johnson-Karp
GABE JOHNSON-KARP
Assistant Attorney General
State Bar #1084731

Attorneys for Petitioner

Wisconsin Department of Justice
Post Office Box 7857
Madison, Wisconsin 53707-7857
(608) 267-8904
(608) 294-2907 (Fax)
gabe.johnson-karp@wisdoj.gov

## CERTIFICATE OF COMPLIANCE

I certify that this document complies with the format and word limit of Fed. R. App. P. 27(d)(1)–(2) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 4944 words. This document also complies with the typeface and type style requirements of Fed. R. App. P. 27(d)(1)(E), Fed. R. App. P. 32(a)(5) and (6), and Cir. R. 32(b) because this document has been prepared in a proportionally spaced typeface using Microsoft Word in 13-point font.

Dated this 6th day of November 2026.

s/ Gabe Johnson-Karp
GABE JOHNSON-KARP
Assistant Attorney General

## CERTIFICATE OF SERVICE

I certify that on November 6, 2026, I electronically filed the foregoing State of Wisconsin's Response in Opposition to Clean Wisconsin and Sierra Club's Motion to Dissolve Stay, for Summary Disposition or, in the Alternative, Expedited Briefing, and to Lift the Abeyance with the clerk of court using the CM/ECF system, which will accomplish electronic notice and service for all participants who are registered CM/ECF users.

Dated this 6th day of November 2026.

s/ Gabe Johnson-Karp
GABE JOHNSON-KARP
Assistant Attorney General