**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE SEVENTH CIRCUIT**

| | | |
|---|---|---|
| STATE OF WISCONSIN, | ) | |
| | ) | |
| *Petitioner*, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| UNITED STATES ENVIRONMENTAL PROTECTION AGENCY and LEE ZELDIN, Administrator, | ) | Case No. 25-1239 |
| | ) | |
| *Respondents*. | ) | |
| | ) | |

---

**CLEAN WISCONSIN AND SIERRA CLUB'S REPLY BRIEF IN SUPPORT OF MOTION TO DISSOLVE STAY, FOR SUMMARY DISPOSITION, OR, IN THE ALTERNATIVE, EXPEDITED BRIEFING, AND TO LIFT THE ABEYANCE**

---

The Court should summarily uphold the Reclassification Action, or at a minimum dissolve the stay, because neither EPA nor Wisconsin disputes that the nonattainment areas failed to attain the 2015 Ozone Standard by the August 3, 2024, Moderate attainment deadline. Under this Court's precedent interpreting 42 U.S.C. § 7511(b)(2), missing that deadline mandated automatic reclassification to Serious. The statute permits no other outcome, and neither EPA nor Wisconsin contends otherwise. EPA therefore had "good cause" to issue the Reclassification Action without notice and comment.

Neither EPA nor Wisconsin identifies any way that administrative reconsideration could result in an outcome other than reclassification. Nor can they, because this Court's precedent and Section 7511(b)(2)'s plain language make an area's design value dispositive: If it exceeds the standard by the deadline, then the area "shall be reclassified by operation of law." No reconsideration can rewrite those historical facts or alter the statutorily compelled result.

Rather than confront the merits, EPA and Wisconsin seek a discretionary abeyance. But abeyance requires balancing competing interests, and the balance here is decidedly one-sided. Continued delay offers no meaningful benefit while inflicting concrete and ongoing harm on Respondent-Intervenors' members and the public, including an estimated 2 to 4 excess deaths and $88.6 million to $112 million in health-related costs each year. EPA and Wisconsin, by contrast, identify no undue hardship from immediately resolving a purely legal question with a statutorily compelled outcome. Delay for delay's sake is not harmless. Wisconsinites pay the price in illness, lives lost, and millions of dollars in irreversible public health harms each year.

## I. The Court Should Summarily Affirm the Reclassification Action.

Summary disposition is appropriate when one party's position "is so clearly correct as a matter of law that no substantial question regarding the outcome of the appeal exists." *Williams v. Chrans*, 42 F.3d 1137, 1139 (7th Cir. 1994) (citation

omitted); *see also Charles Schwab & Co. v. Gomez*, No. 21-1344, 2022 WL 523085, at *1 n.* (7th Cir. Feb. 22, 2022) (rejecting abeyance and forgoing oral argument where "briefs and record adequately present the facts and legal arguments"). It is also appropriate when remaining issues are "insubstantial" and "further briefing would not be helpful." *Walker v. Nat'l Collegiate Athletic Ass'n*, No. 19-2638, 2019 WL 8058082, at *1 (7th Cir. Oct. 25, 2019).

This case squarely satisfies the summary disposition standard because the statute is clear, the only statutorily relevant facts – the Wisconsin nonattainment areas' 2021-2023 design values exceeded the 2015 Ozone Standard – are undisputed, and the result is inescapable: automatic reclassification to Serious. As EPA explained, because the statute compelled a single result, "good cause" existed to forgo notice and comment. "[P]er CAA section 181(b)(2)(A)," the attainment determination turned "solely" on Wisconsin-certified design values and "involve[d] no judgment or discretion," rendering notice and comment "unnecessary." 89 Fed. Reg. 101901, 101905-06 (Dec. 17, 2024); 5 U.S.C. § 553(b)(B) (stating that "good cause" exists where notice and comment would be "impracticable, unnecessary, or contrary to the public interest").

This Court's precedent compels the same outcome. In *Sierra Club v. EPA*, this Court held that Section 7511 establishes a rigid reclassification scheme whereby Congress "specified concrete deadlines and mandated that areas failing to

meet those deadlines shall be reclassified," thus leaving EPA no discretion to devise an alternative outcome. 311 F.3d 853, 861 (7th Cir. 2002) (cleaned up). The Court ordered EPA to immediately reclassify the St. Louis nonattainment area to Serious, explaining that EPA may not "subvert the plain meaning of the statute" by "making its mandatory language merely permissive." *Id.* at 858 (citation omitted). Indeed, in an earlier decision, this Court held that EPA had good cause to forgo notice and comment on initial attainment designations despite their far greater complexity than the Act's mechanical reclassification scheme. *U.S. Steel Corp. v. EPA*, 605 F.2d 283, 288-290 (7th Cir. 1979).

If the statute's plain language and this Court's precedent were not enough, EPA's recent actions in Missouri confirm that Serious reclassification is inevitable. The St. Louis nonattainment area also failed to attain the 2015 Ozone Standard by the Moderate deadline and was reclassified to Serious. 89 Fed. Reg. 92816 (Nov. 25, 2024). Missouri petitioned EPA for reconsideration of the St. Louis area reclassification in January 2025. 90 Fed. Reg. 26240, 26243 (June 20, 2025). After announcing reconsideration in March 2025, EPA nevertheless proposed the same Serious reclassification in June 2025, relying on the same factual and statutory grounds as its 2024 action. *Id*. St. Louis thus demonstrates that reconsideration may repeat the administrative process but cannot alter the result Congress compelled.

EPA's prior use of notice and comment for some reclassification actions does not transform that occasional practice into a binding requirement that neither Congress nor EPA's regulations impose. *Perez v. Mortgage Bankers Ass'n*, 575 U.S. 92, 101-02 (2015) (holding that the Administrative Procedure Act defines the extent of judicial review for procedural correctness and courts may not impose additional procedural requirements); *contra* Wisconsin Opp. at 14 (citing no authority that agency practice creates a binding rule). Congress expressly identified 22 categories of Clean Air Act actions subject to notice and comment, omitting reclassification actions from the list. 42 U.S.C. § 7607(d)(1), (d)(3).

Rather than address the merits, EPA argues that summary disposition is not appropriate because it could disrupt its reconsideration proceeding. EPA Opp. at 2. However, EPA neither explains *how* summary disposition could disrupt its futile reconsideration process nor cites any authority for the proposition that an agency can forestall judicial resolution simply by granting reconsideration.

EPA speculates that reconsideration could "obviate the need for judicial resolution of some or all of the disputed issues" without explanation. EPA Opp. at 3. Regardless, reconsideration solely to provide notice and comment cannot, as a matter of law, illuminate whether "good cause" existed to forgo those procedures in the first instance. *Mack Trucks, Inc. v. EPA*, 682 F.3d 87, 95 (D.C. Cir. 2012) (rejecting EPA's reliance on forthcoming notice and comment as a basis for

declining to decide whether the challenged action satisfied the "good cause" exception).

Wisconsin contends that it challenged the Reclassification Action "to require EPA to regulate" interstate "emissions transported from other states." Wisconsin Opp. at 5. But this Court squarely foreclosed that argument in *Sierra Club*, holding that Section 7511 mandates automatic reclassification notwithstanding ozone contributions from upwind states. 311 F.3d at 860–61. The Court further explained that downwind states like Wisconsin have other Clean Air Act remedies for interstate pollution, including petitioning "EPA to impose further controls on emissions sources in upwind states." *Id.* at 860. Because Congress created no interstate-transport exception to automatic reclassification, this Court held that "it is not our business or the EPA's business to rewrite a clear statute." *Id*. at 862.

Judicial economy and the public interest favor summary disposition here too because the issue is "simple," its resolution "clear," and the parties have had "a full opportunity to be heard." *Otto v. Variable Annuity Life Ins. Co.*, 814 F.2d 1127, 1138 n.11 (7th Cir. 1987). Neither EPA nor Wisconsin cites cases that support further delay. In fact, the cases they cite reinforce the point that, absent changed material facts or developments that could alter the outcome, reconsideration supplies no reason to defer resolution. For example, EPA cites *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, which recognizes agency latitude to adapt

to "changing circumstances," 463 U.S. 29, 42 (1983), yet EPA identifies no changed circumstances. EPA Opp. at 2. EPA cites *Nat'l Ass'n of Home Builders v. EPA*, which permits agencies to reconsider "which policy would be better in light of the facts," 682 F.3d 1032, 1038 (D.C. Cir. 2012), EPA Opp. at 2, but the dispositive facts and the legal outcome they compel are undisputed: The Wisconsin nonattainment areas failed to attain the 2015 Ozone Standard, and reclassification therefore follows. Further delay here does not serve judicial economy when it would require the parties to "duplicate their present efforts at a later date." *Doe v. Vigo Cnty., Indiana*, 905 F.3d 1038, 1042 (7th Cir. 2018).

## II. Absent Summary Disposition, the Stay of the Reclassification Action Should Be Dissolved.

The Court can revisit whether an existing stay is still justified because a merits panel can always "reexamine a ruling made by a motions panel." *Hor v. Gonzales*, 421 F.3d 497, 498 (7th Cir. 2005). The standard for reviewing a prior motions panel decision is de novo because "events since the initial ruling" can allow the Court to "appreciate better the effect of the conflict." *United States v. Njos*, 68 F.4th 1060, 1064 (7th Cir. 2023) (*sua sponte* reconsidering and reversing motions panel's denial of motion to discharge counsel); *see also Aristy-Rosa v. Att'y Gen. of the U.S.*, 188 F.4th 240, 246 (3d Cir. 2026) ("A stay is not forever. Circumstances change."). One changed circumstance is Respondent-Intervenors' intervention and their request that, if the Court declines summary disposition, it

determine for the first time whether the stay is or was ever justified.

Wisconsin argues, without legal support, that the motions panel's stay may only be revisited for abuse of discretion. Wisconsin Opp. at 16. Not only does that contention conflict with this Court's precedent recognizing a merits panel's plenary authority to revisit a motions panel ruling, it also improperly shifts the burden to Respondent-Intervenors. A party who seeks "continuation of a stay," as Wisconsin does here, "bears the burden of showing his entitlement to [that] stay." *Latta v. Otter*, 771 F.3d 496, 498 (9th Cir. 2014).

Even if abuse-of-discretion review applied, that standard is satisfied here. The "traditional stay factors contemplate individualized judgments in each case." *Hilton v. Braunskill*, 481 U.S. 770, 777 (1987). Here, there are no individualized judgments on the stay because Wisconsin's original request was unopposed. Therefore, the record supplies no basis for this Court to conclude whether the motions panel reasonably determined Wisconsin independently satisfied each factor. Because *Nken v. Holder* supplies a standard requiring consideration of four specific factors, 556 U.S. 418, 425-26 (2009), a court must adequately explain its decision on such factors to facilitate meaningful abuse-of-discretion review. *Gall v. United States*, 552 U.S. 38, 51 (2007).

As explained in the subsections below, the four *Nken* factors weigh heavily in favor of dissolving the stay.

### A. Wisconsin Has No Chance of Success on the Merits.

On the merits, the statute compels one outcome: reclassification. The Wisconsin nonattainment areas' design values exceeded the 2015 Ozone Standard and thus failed to attain by the deadline, requiring reclassification "by operation of law." 42 U.S.C. § 7511(b)(2)(A). Neither EPA nor Wisconsin confronts this merits-dispositive point or its consequence: EPA had "good cause" to forgo notice and comment. EPA does not even address or defend maintaining the stay.

Wisconsin cannot establish likelihood of success on the merits merely by pointing to EPA's grant of reconsideration. *Contra* Wisconsin Opp. at 17. Neither EPA's reconsideration letter nor its briefing admits any error in forgoing notice and comment. EPA also does not explain why reconsideration was granted. Wisconsin cites no authority for the extraordinary proposition that an agency's unexplained decision to reconsider itself establishes likelihood of success under *Nken*.

Wisconsin's argument that EPA's mere grant of reconsideration is dispositive of the merits effectively substitutes the agency's decision to reconsider for this Court's independent assessment of Wisconsin's entitlement to a stay under *Nken*. But such an outcome runs afoul of constitutional separation of powers principles because Article III assigns federal courts the "responsibility and power to adjudicate 'Cases' and 'Controversies,'" and therefore courts must "exercise

their independent judgment in deciding whether an agency has acted within its statutory authority." *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369, 384, 412 (2024). EPA's decision to reconsider therefore cannot substitute for this Court's independent assessment of the merits.

### B. The Harms to Respondent-Intervenors' Members and the Public Are Significant.

Since EPA issued the Reclassification Action, Respondent-Intervenors' members have endured harms through at least two ozone seasons, in summers 2025 and 2026, that no later relief can undo. These harms are both in the past and ongoing, yet Wisconsin dismisses them as "speculative" without basis or explanation. Wisconsin Opp. at 21. The record proves otherwise. For example, high ozone levels force Clean Wisconsin member Rebecca Clarke indoors, depriving her of walking with her dogs, gardening, and visiting Lake Michigan's beaches. Clarke Decl. ¶¶ 15–18, ECF No. 32-4. Even normally easy activities become "significantly more difficult," causing "a heaviness in my chest, breathing difficulties, and an unusually fast heartbeat." *Id*. Other members recount similarly concrete harms. *See* ECF Nos. 32-5 (Radke Decl.), 32-6 (Ritger Decl.), 32-8 (Hillringhouse Decl.).

Respondent-Intervenors' and the public's harms are not merely immediate and significant; they compound each month. Current levels of ozone pollution in Wisconsin's nonattainment areas are estimated to cause 2 to 4 excess deaths and

$88.6 million to $112 million in public-health harms each year. Gallagher Decl. ¶ 16, ECF No. 32-2. That translates to roughly $148 million to $187 million during the 20 months this case has remained pending.

While these harms compound, reconsideration could drag them on for many more years. For example, EPA granted reconsideration of the St. Louis reclassification in March 2025 and, more than 20 months later, still has not issued final action despite re-proposing reclassification to Serious. The same course here could push final agency action into 2028, far past the August 3, 2027 Serious attainment deadline, with litigation potentially prolonging the delay further. The Court can summarily resolve this dispute now, sparing millions of Wisconsinites from years of harm while EPA pursues an administrative process that cannot change the result Congress compelled.

### C. Wisconsin's Alleged Injury Is Small Compared to the Public's.

Wisconsin's opposition invokes its August 2025 unopposed stay motion to argue that dissolving the stay would cause irreparable harm. Wisconsin Opp. at 18. Wisconsin first relies on third-party compliance costs, but a state suing the federal government may assert only its own harms, not those of third parties. *Massachusetts v. Mellon*, 262 U.S. 447, 485–86 (1923).

Wisconsin's other asserted harm is the potential cost of processing new permits required by Serious classification, approximately $28,800 per permit.

Good Decl. ¶ 23, ECF No. 12. But if the Court summarily upholds the Reclassification Action now, then Wisconsin suffers no irreparable harm because the permitting revisions become part of the State's compliance obligations. If the Court lifts the stay and expedites merits review, Wisconsin offers no concrete basis to estimate what permitting costs it would incur before the resolution of this case. Wisconsin simply asserts there are 382 potentially affected facilities but never explains how many will require new permits pending resolution. Good Decl. ¶ 23, ECF No. 12.

Even if somehow Wisconsin had to process all 382 permits pending judicial review, the total cost to the State to process those permits would be approximately $11 million. *Id*. That cost is small in comparison to the estimated public health costs, now estimated to exceed $100 million. *Supra* ARG. § II.B.

### D. The Public Interest Supports Dissolution of the Stay

The Clean Air Act's central purpose is protecting the public from harmful air pollution. *Sierra Club v. Franklin Cnty. Power of Illinois, LLC*, 546 F.3d 918, 936 (7th Cir. 2008). Short of summarily upholding the Reclassification Action, only dissolving the stay can advance that purpose. Ozone emissions above the standard already cause an estimated 2 to 4 excess deaths and $88.6 to $112 million in annual harms in Wisconsin's nonattainment areas. Wisconsin's concession that these harms result from ozone exposure, Wisconsin Opp. at 13, proves

Respondent-Intervenors' point: The public interest favors resolution now, not years of delay for a futile reconsideration process.

Dated: November 13, 2026

*/s/ Jeffrey Hammons*

Jeffrey Hammons
Clean Air Task Force
114 State Street, 6th Floor
Boston, MA 02109
(771) 241-6481
jhammons@catf.us

*Counsel for Respondent-Intervenor Clean Wisconsin*

*/s/ Priyam Desai*

Priyam Desai
Sierra Club
2101 Webster St., Ste. 1300
Oakland, CA 94612
(415) 294-0910
priyam.desai@sierraclub.org

*Counsel for Respondent-Intervenor Sierra Club*

## CERTIFICATE OF COMPLIANCE

I certify that this motion complies with the type-volume limitation of Federal Rules of Appellate Procedure 27(d)(1)-(2) because, excluding the parts exempted under Federal Rules of Appellate Procedure 27(d)(2) and 32(f), it contains 2598 words. Per Federal Rule of Appellate Procedure 27(d)(1)(E), I certify that this motion complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this motion has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font. I further certify that this motion has been scanned for viruses and is virus-free.

Dated: November 13, 2026

*/s/ Jeffrey Hammons*

Jeffrey Hammons
Clean Air Task Force
114 State Street, 6th Floor
Boston, MA 02109
(771) 241-6481
jhammons@catf.us

## CERTIFICATE OF SERVICE

I certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

Dated: November 13, 2026

*/s/ Jeffrey Hammons*

Jeffrey Hammons
Clean Air Task Force
114 State Street, 6th Floor
Boston, MA 02109
(771) 241-6481
jhammons@catf.us